IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE CHICAGO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| DINO FRULLA, BRION DOHERTY, ESQ., and MOTHERWAY & NAPLETON, LLP, | ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT

Plaintiffs, TRUSTEES OF THE CHICAGO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND ("Welfare Fund") by and through the law firm of MCGANN, KETTERMAN & RIOUX, LTD., complain of the Defendants, DINO FRULLA, BRION DOHERTY, Esq., and MOTHERWAY & NAPLETON, LLP, and state as follows:

### NATURE OF THE CASE

1. This is an action to enforce the terms of the CHICAGO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND, (the "Welfare Fund") plan of benefits, including an equitable lien by agreement, imposition of a constructive trust, and for other equitable relief pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq*.

2. This action also seeks relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq. to seek a declaration of rights pursuant to the Welfare Fund plan of benefits and ERISA, 29 U.S.C. § 1001, et seq.

1

3. Finally, pursuant to Illinois state law and the supplemental jurisdiction provided by 28 U.S. Code § 1367, this action seeks compensatory damages for Defendant's breach of the Welfare Fund Plan Document; or in the alternative, compensatory damages arising out of the Welfare Fund's detrimental reliance on the Defendant's promise to reimburse the Welfare Fund.

## JURISDICTION

4. This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1) and ERISA § 502(f), 29 U.S.C. § 1132(f) because the Plaintiffs seek equitable relief under Title I of ERISA. Further, this Court has jurisdiction over this action under 28 U.S.C. § 1331 because this action arises under federal law. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S. Code § 1367 because the state law claims form part of the same case or controversy as the federal claims.

## VENUE

5. Venue is proper in the Northern District of Illinois pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Welfare Fund's administrative offices are located in the Northern District of Illinois, because this District is where the threatened violation of ERISA will take place, and because the Defendant resides or may be found in this District.

## PARTIES

6. The Welfare Fund is a self-funded employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), and a multiemployer plan within the meaning of ERISA § 3(37), 29 U.S.C. § 1002(37). It is a nonprofit tax-exempt organization administered by a joint Board of Trustees made up of an equal number of union and employer appointed trustees pursuant to the Taft-Harley Act § 302(c)(5), 29 U.S.C. § 186(c)(5). Plaintiffs are trustees and fiduciaries of the Welfare Fund, and, as such, are entitled to bring this action pursuant to ERISA

§ 502(a)(3), 29 U.S.C. § 1132(a)(3).

7. Defendant DINO FRULLA ("FRULLA") is an individual that resides in Chicago, Illinois. At all times relevant to this action, Defendant FRULLA has been a participant of the Welfare Fund within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7) and has been a Covered Individual under the terms of the Welfare Fund Plan Document in effect during the relevant time period.

8. Defendant BRION DOHERTY, Esq., is a licensed attorney and agent of Defendant MOTHERWAY & NAPLETON, LLP, an Illinois limited liability partnership and law firm with offices located at 140 S. Dearborn Street, Suite 1500, Chicago, IL 60603. These defendants shall be hereinafter collectively referred to as "DOHERTY."

9. At all times relevant to this action, Defendant DOHERTY and/or agents/employees of these defendants, have represented FRULLA in a claim for personal injuries sustained on July 5, 2018.

10. By virtue of their representation of FRULLA, and their benefit obtained by the Welfare Fund's advancement of uncovered medical expenses related to the Injury, the DOHERTY defendants are also participants of the Welfare Fund within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7) and are Covered Individuals under the terms of the Welfare Fund Plan Document in effect during the relevant time period.

**RELEVANT PLAN PROVISIONS**

11. Any health or welfare coverage extended by the Welfare Fund to participants is subject to the terms and conditions stated in the Plan Document. (**EXHIBIT 1 – Plan Document**).

12. Section 14.01 of the Plan Document establishes the terms and conditions of the

Welfare Fund's rights to subrogation and reimbursement with respect to benefits paid on behalf of participants.

13. Section 14.01(A) of the Plan Document states:

The Fund provides no benefits for Claims of a Covered Individual that are related to any Illness or Injury which is caused by third parties or which is Work-Related or the responsibility of any other entity. The Fund will deny any Claim for an Illness or Injury which is caused by third parties, which is Work-Related or the responsibility of any other entity except as otherwise provided in this section.

14. Section 14.01(B) of the Plan Document states in relevant part:

If the Fund chooses to advance benefits for the Injuries and Illnesses cause by third parties or that are Work-Related or the responsibility of any other entity, a Covered Individual:

(1) Upon final adjudication, settlement and/or receipt of case proceeds, agrees to reimburse the Fund up to (i) the amount of benefits paid by this Fund or amounts that the Fund is obligated to pay… from any recovery received from any third party, insurer or any other source…

(3) Agrees to enter into a subrogation and reimbursement agreement that is given to the Covered Individual by the Fund, which Agreement the Fund may require before a Covered Individual can receive any advancement of benefits…. If the Covered Individual is a minor or incompetent to execute that Agreement, that person's parent, the Participant (in the case of a minor dependent child)… must execute that Agreement upon request by the Fund. A Covered Individual must comply with all the terms of the subrogation and reimbursement agreement, including the establishment of a trust for the benefit of the Fund. In this regard, the Covered Individual agrees that out of any recovery he receives from any Source or Coverage…the identified amount that the Fund has Advanced or is obligated to Advance in benefits will be immediately deposited into a trust for the Fund's benefit and the Fund shall have an equitable lien by agreement in the amount set forth in this paragraph which shall be enforceable as part of an action to enforce the Plan terms under ERISA Section 503(a)(3), including injunctive action to ensure that these amounts are preserved and not disbursed;

(4) The Fund's equitable lien by agreement imposes a constructive trust upon the assets received as a result of the recovery by the Covered Individual…

4

(5) The Agreement will grant the Fund a priority, first dollar security interest and a lien in any recovery received from any Source or from any Coverage, whether by suit, settlement or otherwise…

(9) Agrees that the Fund's right to reimbursement applies regardless of the existence of any State law or common law rule (including, but not limited to, the Illinois Workers' Compensation Act, 820 ILCS 305/1, et seq. and the Illinois Wrongful Death Act, 740 ILCS 180/0.01, et seq.), laws banning or limiting recoveries from a person or entity that caused the Illness or Injury ("collateral source rule") that would serve to ban or limit recovery of the Advance by the Fund from the Covered Individual or from any other Source;

(10) Agrees not to do anything that will waive, compromise, diminish, release or otherwise prejudice the Fund's reimbursement rights or subrogation rights;

(11) Agrees to notify and consult with the Fund or its designee in writing before starting any legal action or administrative proceeding against a Third Party alleged to be responsible for the Illness or Injury that resulted in the Advance, and before entering into any settlement agreement with that Third Party or Third Party's Insurer based on those allegations;

15. Section 14.01(C) of the Plan Document states in relevant part:

For purposes of this Plan Section 14.01, the term "Covered Individual" shall also include representatives, guardians, trustees, estate representatives, heirs, executors, administrators of special needs trusts and any other agents, persons or entities that may receive a benefit on behalf of or for Covered Individuals.

16. Section 14.01(D) of the Plan Document states in relevant part:

The Fund's subrogation and reimbursement rights and the Covered Individual's obligation set forth in this Plan Section 14.01 shall apply regardless whether the Covered Individual executes a subrogation and reimbursement agreement.

## FACTS COMMON TO ALL COUNTS

**<u>Injury</u>**

17. On July 5, 2018, FRULLA's minor dependent was injured in a golf-cart accident. ("Injury").

18. Pursuant to Section 14.01 of the Plan Document, FRULLA executed the Chicago Regional Council of Carpenters Welfare Fund Reimbursement Agreement for Third Party Causation ("Reimbursement Agreement") with the Welfare Fund to compel the Welfare Fund to advance uncovered benefits for medical expenses incurred as a result of the Injury. (**EXHIBIT 2 – Reimbursement Agreement**).

19. During the period of July 5, 2018 through on or about October, 16, 2019, FRULLA's minor dependent received medical treatment to treat conditions suffered as a result of the Injury.

20. Because FRULLA was a Covered Individual pursuant to the Plan Document, and because FRULLA signed a Reimbursement Agreement, the Welfare Fund advanced these medical expenses in the amount of $53,002.15. These benefits took the form of payments made from the Welfare Fund's assets.

**Injury Claim**

21. Beginning on or after July 5, 2018, the DOHERTY defendants and agents/employees of theirs represented FRULLA, in his capacity as guardian of FRULLA's dependent minor, in a claim seeking damages for personal injuries arising out of the Injury. ("Injury Claim").

22. In 2019, DOHERTY filed a lawsuit against several defendants in the Circuit Court of Cook County seeking damages arising out of the personal injuries sustained by FRULLA's dependent minor on or about July 5, 2018.

23. Despite the explicit requirements to keep the Welfare Fund or its representative on notice of litigation, DOHERTY as FRULLA's agent, did not advise the Welfare Fund of the 2019 initiation of litigation in the Injury Claim until August 10, 2021.

**Current Settlement Proceeds of $20,000**

24. On information and belief, during 2020, Defendants obtained a settlement from one of several defendants in the Injury Claim in the amount of $20,000.

25. Defendants FRULLA and DOHERTY have not fully reimbursed and actively seek not to fully reimburse the Welfare Fund from the proceeds of their $20,000 recovery from the Injury Claim in violation of the terms of the Plan Document. The Welfare Fund has therefore been damaged in an amount not less than $20,000.

26. Upon information and belief, the proceeds of a recovery from the Injury Claim are in possession or control of Defendant DOHERTY and/or DOHERTY's client trust account.

27. DOHERTY is required by the Illinois Rules of Professional Conduct to safeguard the property of third parties. Rule 1.15(d) of the Illinois Rules of Professional conduct states:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

28. Further, Rule 1.15(e) of the Illinois Rules of Professional Conduct states:

> When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

**Future Settlement Proceeds**

29. On information and belief, one of several defendants in the Injury Claim previously offered $300,000 to settle its portion of the Injury Claim. FRULLA, by and through DOHERTY, turned down the $300,000 offer pending litigation over whether a different

insurance policy with limits of $500,000 covered the Injury.

30. Neither DOHERTY nor FRULLA consulted with the Welfare Fund before turning down this settlement offer.

31. On information and belief, based on representations made by DOHERTY, the dispute over the $500,000 policy is still pending.

32. On information and belief, based on representations made by DOHERTY, the $300,000 policy will again be offered to settle the claim if it is determined that the $500,000 policy does not offer coverage for the Injury.

33. Therefore, on information and belief, based on representations made by DOHERTY, there will be a total of at least $320,000 up to $520,000 in settlement proceeds aggregated from all defendants in the Injury Claim once ancillary declaratory judgment actions are resolved.

**Motion to Set Hearing to Adjudicate Alleged Lien or Subrogation Interest**

34. On or about August 10, 2021, DOHERTY filed a petition in the underlying personal injury action to set a hearing to adjudicate the Welfare Fund's reimbursement interest to zero based on the Illinois rule regarding liens on a minor's recovery as set forth in *Est. of Aimone v. State of Ill. Health Benefit Plan/Equicor*, 248 Ill. App. 3d 882 (3rd Dist. 1993).

35. DOHERTY offers no basis for the state court's personal jurisdiction over the Welfare Fund or subject matter jurisdiction seeking to invalidate the Plan Document, a federally enforceable contract between the Welfare Fund and FRULLA.

36. The Welfare Fund has not been made a party to the Injury Claim and has not been served with pleadings or service of process and the state court does not have personal jurisdiction over the Welfare Fund.

37. The Defendants in this action, DOHERTY and FRULLA, in his individual capacity, are not parties to the Injury Claim.

38. The motion does not seek to apportion the available proceeds of $20,000, which, if properly pleaded, would arguably be within the state court's *in rem* jurisdiction; rather, this motion seeks to invalidate the terms of the Plan Document of a self-funded ERISA qualified welfare plan, and completely quash the Fund's reimbursement interest of $53,002.15.

39. Even though the Illinois state court has no personal jurisdiction over the Welfare Fund, or subject matter jurisdiction to interpret or the terms of the Plan Document, the filing of the motion is an attempt to diminish and prejudice the Welfare Fund's right of reimbursement is a clear breach of the terms of the Plan Document by Defendants.

**Legal Issues Presented for Declaratory Judgment**

40. The Illinois rule prohibiting liens on a minor's estate ("Illinois Minor Rule") prohibits an insurance company from asserting its subrogation interest against the personal injury proceeds recovered by a minor. The rationale behind this is that the medical expenses are the parent's responsibility, and because the minor received no benefit from having their medical bills paid by the insurer, the insurer cannot recover from the minor's estate.

41. The Illinois Minor Rule, in relation to self-funded ERISA plans, is completely preempted by ERISA because it "relates to" and impermissibly inhibits the uniform administration of self-funded ERISA benefit plans. *Health Cost Controls v. Rogers*, 909 F. Supp. 537, 543 (N.D. Ill. 1994); *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990).

42. The Illinois Minor Rule also contradicts the terms of the Plan Document. The Plan Document explicitly abrogates any state law rules that would limit recovery of the Welfare Fund's reimbursement interest, provides for reimbursement related to a minor's Injury Claim by

requiring the person's parent to execute the Reimbursement Agreement on the injured person's behalf, and states explicitly that the term Covered Individual is to include guardians of a minor.

## **COUNT I – EQUITABLE LIEN & CONSTRUCTIVE TRUST**

**All Defendants, as to the $20,000 available settlement proceeds**

43. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 42 of this Complaint as though fully set forth herein.

44. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Plaintiffs bring Count I to obtain appropriate equitable relief against the Defendants.

45. One or more of the Defendants is in possession of a specifically identifiable fund of $20,000 in the amount of the Welfare Fund's subrogation and reimbursement lien asserted on the settlement of $20,000.

46. Under section 14.01 of the Plan, the Welfare Fund has established an equitable lien in the identifiable amount of $20,000 against DOHERTY (to the extent that settlement funds subject to the lien are maintained in their client trust account or in an escrow account, or have been distributed to them as an attorney's fee) and/or FRULLA (to the extent that settlement funds subject to the lien have been disbursed to them from DOHERTY or are being held for their benefit in a client trust account or escrow account).

47. The $20,000 held by one or more of the Defendants, and upon which the Welfare Fund is entitled to an equitable lien in the amount of $20,000, is to be held in constructive trust to the extent of the Welfare Fund's lien by Defendants for the Welfare Fund.

48. Based upon the equitable lien and the constructive trust, the Defendants stand in a fiduciary relationship to the Welfare Fund with respect to the $20,000 value of such lien and

trust, and the Defendants may not dispose of assets subject to that lien or violate fiduciary duties relating to those assets.

**WHEREFORE,** the Plaintiffs request the following relief:

a) Equitable remedies against the Defendants and in favor of the Plaintiffs, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), in the form of:
   i. Imposition of an equitable lien and a constructive trust upon the settlement funds held by the Defendants, as identified in this Complaint;
   ii. Enforcement of the Plaintiffs' equitable lien in the identifiable amount of $20,000 (plus interest) against assets of $20,000 belonging to the Plaintiffs and held by the Defendants, as identified in this Complaint;
   iii. Enjoinment of the Defendants from disposing of any funds held in constructive trust for the Plaintiffs, until such time as the Plaintiffs' equitable lien has been satisfied in full;
b) That this Court retain jurisdiction to enforce the equitable remedies sought by the Plaintiffs in this Complaint, until such time as the Plaintiffs' equitable lien has been satisfied in full;
c) An award of attorneys' fees and costs pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1); and
d) Such further or different relief as this Court may deem proper and just.

## COUNT II – BREACH OF PLAN

### (Subrogation/Reimbursement Lien & Constructive Trust)

### All Defendants, as to the $20,000 available settlement proceeds

49. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 48 of this Complaint as though fully set forth herein.

50. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Plaintiffs bring Count II to enforce the terms of the Plan.

51. The Plan grants the Welfare Fund reimbursement and subrogation rights, and requires the repayment by any responsible party (including the Defendants) of medical and disability expenses paid by the Welfare Fund on behalf of a covered individual.

52. Thus, under the terms of the Plan, the Welfare Fund is entitled to reimbursement from the Defendants in the amount of $53,002.15 representing funds paid by the Welfare Fund on behalf of FRULLA for medical and disability expenses incurred as a result of the Injury, before any settlement proceeds, including attorneys' fees, are paid to the Defendants.

53. To date, the Defendants have failed to pay any reimbursement to the Welfare Fund from the $20,000 settlement proceeds, and the full amount of the Welfare Fund's subrogation and reimbursement lien (i.e., $53,002.15) is unreimbursed.

**WHEREFORE,** the Plaintiffs request the following relief:

a) Equitable remedies against the Defendants and in favor of the Plaintiffs, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), in the form of:
   i. An order enforcing the Plan and enjoining the Defendants from violating the Plaintiffs' subrogation and reimbursement rights as established by the Plan, including an order requiring reimbursement in the amount of the Plaintiffs' subrogation and reimbursement lien of $53,002.15 (plus interest);
   ii. Enjoinment of the Defendants from disposing of any settlement funds in the identifiable amount of $20,000 against assets of $20,000 held by the Defendants as described in this Complaint, until such time as the Plaintiffs' subrogation and reimbursement rights as established by the Plan have been satisfied in full;
   iii. Imposition of an equitable lien and a constructive trust upon the settlement funds held by the Defendants, as identified in this Complaint;
b) That this Court retain jurisdiction to enforce the equitable remedies sought by the Plaintiffs in this Complaint, until such time as the Plaintiffs' subrogation and reimbursement rights, as established by the Plan, have been satisfied in full;
c) An award of attorneys' fees and costs pursuant to ERISA § 502(g)(1), 29 U.S.C. §

1132(g)(1); and

d) Such further or different relief as this Court may deem proper and just.

## **COUNT III – DECLARATORY JUDGMENT**

### **All Defendants**

54. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 53 of this Complaint as though fully set forth herein.

55. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and the Declaratory Judgment Act, 28 U.S.C. §2201(a), the Plaintiffs bring Count # to obtain appropriate equitable relief against the Defendants in the form of a declaratory judgment.

56. There is an actual controversy between the parties in that the Welfare Fund is threatened with a "probabilistic injury" by the Defendant's assertion of the Illinois rule against liens on a minor's personal injury recovery in Illinois state court as it pertains to two the available settlement proceeds of $20,000 as well as the future settlement proceeds of up to $500,000. This injury will take the form of threatened depletion of the Welfare Fund's assets as well as frustration of the uniform enforcement of the Plan Document, which disrupts the Plaintiffs' exercise of fiduciary duties.

57. ERISA § 514(a), 29 U.S.C. §1144(a) preempts any state law that "relates to" a self-funded ERISA qualified employee benefit plan.

58. The Illinois rule prohibiting recovery from the personal injury claim of a minor is explicitly preempted by ERISA because it "relates to" and impermissibly inhibits the uniform administration of self-funded ERISA benefit plans. *Health Cost Controls v. Rogers*, 909 F. Supp. 537, 543 (N.D. Ill. 1994); *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990).

13

59. The Plan Document explicitly abrogates any state law rules that would limit recovery of the Welfare Fund's reimbursement interest, provides for reimbursement related to a minor's Injury Claim by requiring the person's parent to execute the Reimbursement Agreement on the injured person's behalf, and states explicitly that the term Covered Individual is to include guardians of a minor.

60. By the terms of the Welfare Fund's Plan Document, the Illinois rule prohibiting liens on a minor's recovery is preempted and the Welfare Fund is entitled to recover the full reimbursement interest of $53,002.15 out of proceeds recovered in the Injury Claim and any other recovery related to the Injury.

61. To the extent that the Defendants may be able to adjudicate or allocate the $20,000 available settlement proceeds pursuant to the *in rem* jurisdiction of the state court, the Welfare Fund seeks a declaratory judgment that the Illinois Minor Rule is preempted by ERISA and operation of the Plan Document ensures the Welfare Fund's recovery out of the expected future settlement proceeds of between $300,000 and $500,000.

**WHEREFORE**, the Plaintiffs request the following relief:

    a. Equitable remedies against the Defendants and in favor of the Plaintiffs, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), in the form of: A declaratory judgment that the Illinois rule prohibiting recovery from a minor's personal injury claim is preempted by ERISA and does not bar the enforcement of the Welfare Fund's Plan Document related to the available and future settlement proceeds in the Injury Claim;

    b. To the extent that the Defendants may be able to adjudicate or allocate the $20,000 available settlement proceeds pursuant to the *in rem* jurisdiction of the

state court, the Welfare Fund seeks a declaratory judgment that the Illinois Minor Rule is preempted by ERISA and operation of the Plan Document ensures the Welfare Fund's recovery out of the expected future settlement proceeds of between $300,000 and $500,000;

c. That this Court retain jurisdiction to enforce the equitable remedies sought by the Plaintiffs in this Complaint;

d. An award of attorneys' fees and costs pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1); and

e. Such further or different relief as this Court may deem proper and just.

## **COUNT IV – BREACH OF CONTRACT or PROMISSORY ESTOPPEL (DAMAGES)**
### **Defendant Frulla**

62. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 61 of this Complaint as though fully set forth herein.

63. Pursuant to the common law of Illinois, the Plaintiffs bring Count # to obtain compensatory damages against the Defendant FRULLA for breach of the Plan Document and detrimental reliance on FRULLA's unambiguous promise to reimburse the Welfare Fund.

64. This Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S. Code § 1367 because the state law claim forms part of the same case or controversy as the federal claims.

65. The Plan Document and Reimbursement Agreement is a valid enforceable contract between the Welfare Fund and FRULLA.

66. FRULLA made an unambiguous promise to the Welfare Fund to reimburse the

Welfare Fund if the Welfare Fund advanced uncovered benefits on FRULLA's behalf related to the Injury.

67. The Welfare Fund relied on FRULLA's promise and performed its obligations under the Plan Document by advancing uncovered medical benefits on FRULLA's behalf in reliance on FRULLA's promise to abide by the terms of the Plan Document and reimburse the Welfare Fund upon receipt of proceeds related to the Injury.

68. The Welfare Fund's reliance was expected and foreseeable by FRULLA, particularly because FRULLA signed the Reimbursement Agreement which set forth the terms under which the Welfare Fund would advance the benefits in the amount of $53,002.15.

69. The Welfare Fund relied on FRULLA's promise to its detriment, as FRULLA now seeks to deny the Welfare Fund reimbursement of the advance of benefits.

70. FRULLA has breached his obligations under the Plan Document through the following conduct by, *inter alia*: failing to put the Welfare Fund on notice of the initiation of litigation, failure to reimburse the Welfare Fund, and by seeking to deprive the Welfare Fund to its reimbursement interest in the amount of $53,002.15.

71. Even though the state court has no cognizable jurisdictional basis to adjudicate the rights to the unrealized settlement proceeds, FRULLA has anticipatory breached the Plan Document as it pertains to the future settlement of $300,000 to $500,000 by seeking to adjudicate the Fund's reimbursement interest to zero.

72. FRULLA's breaches of the Plan Document have resulted in injury to the Welfare Fund in an amount not less than $53,002.15, and attorneys' fees and costs.

**WHEREFORE**, the Plaintiffs request the following relief:

    a. A judgment against the Defendant Frulla and in favor of the Plaintiffs for

$53,002.15 in compensatory damages;

b. That this Court retain jurisdiction to enforce the remedies sought by the Plaintiffs in this Complaint;

c. An award of attorneys' fees and costs; and

d. Such further or different relief as this Court may deem proper and just.

 

Respectfully Submitted,
TRUSTEES OF THE CHICAGO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND

By: /s/ Daniel E. Quist
One of Plaintiffs' Attorneys

Daniel E. Quist (ARDC #6313773)
McGann, Ketterman & Rioux, Ltd.
111 E. Wacker Dr., Suite 2600
Chicago, IL 60601
(312) 251-9700; dquist@mkrlaborlaw.com

Date: August 19, 2021